## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 25-cr-**74-JL-AJ-01 |
| | ) | |
| **MICHAEL KIROUAC** | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, Erin Creegan, United States Attorney for the District of New

Hampshire, and the defendant, Michael Kirouac, and the defendant's attorney, Brian Quirk,

Esquire, enter into the following Plea Agreement:

1. <u>The Plea and the Offense</u>.

The defendant agrees to waive his right to have this matter presented to a grand jury and

plead guilty to an Information charging him with Wire Fraud, in violation of 18 U.S.C. § 1343.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in Section 6 of this agreement.

2. <u>The Statute and Elements of the Offense</u>.

Title 18, United States Code, Section 1343 provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or
> artifice to defraud, or for obtaining money or property by means of
> false or fraudulent pretenses, representations, or promises, transmits
> or causes to be transmitted by means of wire, radio, or television
> communication in interstate or foreign commerce, any writing signs,
> signals, pictures, or sounds for the purpose of executing such
> scheme or artifice, shall be fined under this title or imprisoned not
> more than 20 years, or both.

18 U.S.C. § 1343.

The defendant understands that the offense has the following elements, each of which the

- 1 -

United States would be required to prove beyond a reasonable doubt at trial:

First, that there was a scheme, substantially as charged in the indictment, to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

Second, that the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

Third, that the defendant knowingly and willfully participated in this scheme with the intent to defraud; and

Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, the defendant caused an interstate wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate wire communication would be used, on or about the date alleged.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2023 Revisions,* Instruction 4.18.1343,
https://www.med.uscourts.gov/sites/med/files/crpjilinks.pdf.

    3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government

would introduce evidence of the following facts, which would prove the elements of the offense

beyond a reasonable doubt:

The defendant was a resident of New Hampshire.

The defendant was an officer and part-owner of several companies, including HK

Manchester (d/b/a XO Bistro), HK Loudon (d/b/a Main Street Grill and Bar), HK Hudson, and

HK Pelham (together, the "HK Companies"). The HK Companies were corporate entities with

business addresses and operations in New Hampshire. The defendant controlled, in whole or in

part, the HK Companies.

The Angus Lea Golf Course was located at 126 West Main Street in Hillsborough, New

Hampshire. The defendant controlled, in whole or in part, a holding company called KTL

Holdings to operate the Angus Lea Golf Course.

- 2 -

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.

In or around March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and expanded existing programs, including programs created or administered by the SBA.

The Economic Injury Disaster Loan ("EIDL") program was one such source of financial assistance provided by the CARES Act.  It provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.  The EIDL program was administered by the SBA.

The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic.

To obtain an EIDL, a qualifying business was required to apply to the SBA and provide information about its operations, such as the number of employees and the entity's gross business revenues and cost of goods sold in the 12 months prior to January 31, 2020.  The amount of the loan, if approved, was determined based, in part, on the information provided concerning the number of employees, gross revenue, and cost of goods.

Any funds issued under an EIDL were issued directly by the SBA.  EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  EIDL funds could not be used for personal expenses or to move businesses from one location or another without the express permission of the SBA.

EIDL applications and documents were received by a cloud-based platform through

- 3 -

servers located outside of New Hampshire.

Between on or about March 31, 2020, and continuing through on or about February 16, 2022, the defendant participated in a scheme to defraud the SBA.   The defendant signed agreements to obtain EIDL funding certifying that he would use EIDL proceeds solely as working capital for the HK Companies and that he would not use the proceeds for personal purposes or to relocate the HK Companies without the SBA's express permission.

**Misuse of HK Manchester and HK Loudon Funds**

The defendant's emails and workplace instant messages show that, beginning on an unknown date, but by spring 2021 at the latest, the defendant sought to purchase a golf course. Several private lenders declined to lend the defendant money to purchase a golf course.   The defendant's emails and instant messages show that the defendant then wanted to use SBA funds to purchase a golf course.

On or about August 9, 2021, the defendant contacted the SBA requesting EIDL financing for HK Manchester.   As charged in Count 1 of the Information, on September 22, 2021, the defendant executed a Loan Authorization and Agreement for $321,100 in funding.   The defendant certified that he would use the funding solely as working capital for HK Manchester.

The SBA deposited $321,100, minus a $100 processing fee, into a Bar Harbor Bank account ending -2956 in the name of HK Manchester.   The defendant controlled this bank account.

In August 2021, the defendant contacted the SBA requesting EIDL financing for HK Loudon.   The defendant contacted the office of U.S. Senator Jeanne Shaheen for assistance in expediting the financing request.   On November 14, 2021, the defendant executed a Loan Authorization and Agreement for $352,100 in funding.   The defendant certified that he would

- 4 -

use the funding solely as working capital for HK Loudon.

The SBA deposited $352,100, minus a $100 processing fee, into a Bar Harbor Bank account ending -3198 in the name of HK Loudon.    The defendant controlled this bank account.

On August 4, 2021, the defendant signed a Purchase and Sale Agreement to purchase the Angus Lea Golf Course for $699,000.    The defendant made an initial $15,000 deposit.

Between October 1, 2021, and November 30, 2021, the defendant made three transfers totaling $321,000 from the HK Manchester account ending -2956 to the HK Loudon account ending -3198.    The $321,000 from the HK Manchester EIDL was combined with the $352,000 from the HK Loudon EIDL so that the balance of the HK Loudon account ending -3198 on November 30, 2021, was $703,648.83.

On November 30, 2021, the defendant initiated a transfer of $684,707.52 from the Bar Harbor account ending -3198 to another account to purchase the Angus Lea Golf Course.

**Fraudulent Application for HK Hudson**

On or about March 30, 2021, the defendant submitted an EIDL application for HK Hudson.    The SBA initially declined the application.    Between July 2020 and September 2021, the defendant asked the SBA to reconsider the denial and sent additional documents to the SBA. On October 1, 2021, the defendant agreed to sell HK Hudson to a third party.    The sale of HK Hudson closed on or around January 18, 2022.    At all relevant times, the defendant did not inform the SBA he was planning to sell HK Hudson.

In January 2022, the SBA awarded HK Hudson a $260,500 EIDL.    The defendant signed a Loan Authorization and Agreement on January 14, 2022.    The defendant certified that he would use the funding solely as working capital for HK Hudson.

The SBA deposited $260,500, minus a $100 processing fee, into a Citizens Bank account

ending -4550 in the name of HK Hudson.   The defendant controlled this bank account.

Over the next three months, the defendant transferred almost all the EIDL funds intended for HK Hudson to other accounts he controlled.   For example, on March 31, 2022, the defendant transferred $50,000 via cashier's check from the HK Hudson account ending -4550 to an account ending -3590 in the name of KTL Holdings at Bar Harbor Bank.   Those funds were used to operate the Angus Lea Golf Course.

**Misuse of HK Pelham Funds**

On or about March 31, 2020, the defendant submitted an EIDL application for HK Pelham.   The SBA approved a $119,000 EIDL for HK Pelham.   The defendant executed a Loan Authorization and Agreement for the funds on May 6, 2020.   The defendant certified that he would use the funding solely as working capital for HK Pelham.

The SBA deposited $119,000, minus a $100 processing fee, into a Citizens Bank account ending -2027 in the name of HK Pelham.   The defendant controlled this bank account.

Over the next few months, the defendant misused the EIDL proceeds.

On November 13, 2020, the defendant sold HK Pelham to a third party. Despite selling HK Pelham, on July 8, 2021, the defendant emailed the SBA requesting additional EIDL funds for HK Pelham.

In February 2022, the SBA contacted the defendant requesting proof of HK Pelham's address.   The defendant responded that correspondence could be sent to his personal address. The defendant did not disclose that he already sold HK Pelham in November 2020.

4.   Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.      A maximum prison term of 20 years (18 U.S.C. § 1343);

- 6 -

B.  A maximum fine of $250,000 or twice the gross gain or loss, whichever is greater (18 U.S.C. § 3571(b)(3) or (d));

C.  A term of supervised release of a term of supervised release of not more than 3 years (18 U.S.C. §§ 3559(a)(3); 3583(b)(2)).   The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D.  A mandatory special assessment of $100, $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)); and

E.  In addition to the other penalties provided by law, the Court may order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, he will provide the United States with a financial disclosure statement and supporting financial documentation.

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

5.  Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.  Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.      Respond to questions from the Court;

C.      Correct any inaccuracies in the pre-sentence report;

D.      Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

(a)      The United States will recommend that the defendant be sentenced at the bottom of the applicable advisory sentencing guidelines range as determined by the Court;

(b)      For purposes of Guidelines calculation, the loss amount is between $550,000 and $1,500,000 (U.S.S.G. § 2B1.1(b)(1)(H));

(c)      The defendant agrees to a money judgment of $1,139,166.68 in lieu of forfeiture of the Angus Lea Golf Course, as set forth in Section 13 of this Plea Agreement; and

(d)      The defendant is liable for $1,139,166.68 in restitution, broken down as follows:

    a.  HK Manchester: $321,000 in principal and $36,222.72 in accrued interest

    b.  HK Loudon: $352,100 in principal and $940.54 in accrued interest

    c.  HK Hudson: $260,500 in principal and $30,887.07 in accrued interest

    d.  HK Pelham: $119,000 in principal and $18,516.35 in accrued interest

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.  Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.  Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.  Challenges the United States' offer of proof at any time after the plea is entered;

C.  Denies involvement in the offense;

D.  Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.  Fails to give complete and accurate information about his financial status to the Probation Office;

F.  Obstructs or attempts to obstruct justice, prior to sentencing;

G.  Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.  Fails to appear in court as required;

I.  After signing this Plea Agreement, engages in additional criminal conduct; or

J.  Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the

United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

    8.   <u>Waiver of Trial Rights and Consequences of Plea</u>.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.  The defendant also understands that he has the right:

    A.    To plead not guilty or to maintain that plea if it has already been made;

    B.    To be tried by a jury and, at that trial, to the assistance of counsel;

    C.    To confront and cross-examine witnesses;

    D.    Not to be compelled to provide testimony that may incriminate him; and

    E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

    9.   <u>Acknowledgment of Guilt; Voluntariness of Plea</u>.

The defendant understands and acknowledges that he:

    A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

    B.    Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10.    Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.    Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The

- 12 -

defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12.    Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy federal criminal liability in the District of New Hampshire arising from the conduct that forms the basis of the Information in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

- 13 -

13.    Forfeiture.

The defendant agrees to forfeit to the United States any property that constitutes or is derived from proceeds traceable to the wire fraud offense to which he is pleading, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), because of his guilty plea.

The defendant further agrees to the entry of a forfeiture money judgment, pursuant to Fed. R. Crim. P. 32.2(b)(1), in the amount of $1,139,166.68, which is equal to the gross proceeds that the defendant obtained, directly or indirectly, from the wire fraud offense to which he is pleading guilty.

The defendant further agrees:

A.    That at least one of the conditions listed in 21 U.S.C. § 853(p) exists; and that the United States is therefore entitled to forfeit substitute property equal to the proceeds obtained by him, in an amount not to exceed $1,139,166.68.

B.    To waive his right to have the Court determine the forfeiture of substitute property under 21 U.S.C. § 853(p)(2) and Fed. R. Crim. P. 32.2(e); to waive the procedures in Fed. R. Crim. P. 32.2(e)(2); to waive any defenses to forfeiture of the substitute property, and to agree to the entry of an order forfeiting substitute property.

C.    That the net proceeds obtained from the liquidation of any properties forfeited as substitute assets shall be credited to the money judgment.

D.    Not to contest the forfeiture of his interest in these substitute assets through any criminal, civil and/or administrative forfeiture action. Defendant waives any right he may have to seek remission or mitigation of the forfeiture of substitute property.

E.    That none of the forfeitures of substitute property shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor

- 14 -

shall the forfeitures be used to offset the defendant's tax liability, or any other debt owed by the defendant to the United States.

F.    To waive all constitutional, statutory, and any other challenges, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including the following: (i) the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the U.S. Constitution; (ii) the Court's failure to comply with any and all requirements of Fed. R. Crim. P. 11(b)(1)(J) at the change of plea hearing; and, (iii) failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.    The defendant further acknowledges that he understands that forfeiture is part of the sentence that the Court may impose.

G.    To waive and release all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not.

H.    To hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

14.    Waivers.

A.    Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or

- 15 -

sentence on direct appeal.   By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.    His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.  Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.    His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea

Agreement that have retroactive effect.

      C. Freedom of Information and Privacy Acts

      The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. §522a.

      D. Appeal by the Government

      Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

      15.  <u>No Other Promises</u>.

      The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

      16.  <u>Final Binding Agreement</u>.

      None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

      17.  <u>Agreement Provisions Not Severable</u>.

      The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

ERIN CREEGAN

~~JOHN J. MCCORMACK~~

~~Acting~~ United States Attorney

Date: _8/28/25_

By: _____

Alexander S. Chen
Assistant United States Attorney
MA Bar Association #698458
53 Pleasant St., 4th Floor
Concord, NH 03301
Alexander.chen@usdoj.gov

 

The defendant, Michael Kirouac, certifies that he has read this 18-page Plea Agreement and that he fully understands and accepts its terms.

Date: _8-26-25_    _____

Michael Kirouac, Defendant

I have read and explained this 18-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _August 27, 2025_    _____

Brian Quirk, Esquire
Attorney for Michael Kirouac

- 18 -